**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**GLENDA C. BENNETT**                                                                **PLAINTIFF**

**v.**                                                 **CIVIL ACTION NO. 2:14cv178-KS-MTP**

**CAROLYN W. COLVIN**                                                            **DEFENDANT**

## REPORT AND RECOMMENDATION

Plaintiff Glenda Bennett brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying her claim for social security disability insurance benefits. The matter is now before the Court on Defendant's Motion [15] to Affirm the Commissioner's Decision. Having considered the pleadings, the record and the applicable law, and being fully advised in the premises, the undersigned recommends that the Motion [15] be GRANTED.

## PROCEDURAL HISTORY

On November 5, 2012, Plaintiff applied for a period of disability and disability benefits, alleging a disability onset date of August 9, 2012. (Administrative Record [13] at 135-38.)[1] The Plaintiff stated that she was disabled due to Type II diabetes, kidney disease, neuropathy, depression, anemia, osteoarthritis, hypomagnesemia, GERD, Vitamin B12 deficiency, diarrhea, secondary hyperparathyroidism, and bipolar disorder. ([13] at 83.) Her application was denied initially and upon reconsideration. ([13] at 83-90; 92-97.) Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ([13] at 108-09.)

---

[1]For ease of reference and pursuant to the Court's Order [3] directing filing of briefs, the administrative record is cited to herein by reference to the Court's docket number and docket page number in the federal court record and not the Administrative Record page number.

On March 3, 2014, a hearing was convened before ALJ Laurie H. Poriello. ([13] at 47-81.) The ALJ heard testimony from Plaintiff and Vocational Expert ("VE") Ms. Hutchins. ([13 at 48.) On July 21, 2014, the ALJ issued a finding that Plaintiff was not disabled. ([13] at 13-28.) Plaintiff appealed this decision to the appeals council. ([13] at 12.) The Appeals Council denied Plaintiff's request for review on September 23, 2014, rendering the ALJ's decision the final decision of the Commissioner. ([13] at 5.)

Plaintiff filed her complaint on October 31, 2014, requesting an order from this Court reversing the decision denying benefits and directing the Commissioner to grant Plaintiff disability insurance and to pay the Plaintiff's attorney fees. *See* Complaint [1]. The Commissioner answered the Complaint, denying that Plaintiff is entitled to any relief, and also filed a motion to affirm her decision. *See* Answer [7]; Motion [15]; Memorandum in Support [16].  The parties have briefed the issues in this matter pursuant to the Court's Scheduling Order [3], and the matter is now ripe for decision.

## **BURDEN OF PROOF**

In *Harrell v. Bowen*, the Fifth Circuit detailed the shifting burden of proof that applies to disability determinations:

> An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act.  Once the claimant satisfies his initial burden, the [Commissioner] then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and therefore, not disabled.  In determining whether or not a claimant is capable of performing substantial gainful activity, the [Commissioner] utilizes a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f) (1988):
>
> 1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
>
> 2. An individual who does not have a 'severe impairment' will not be found to be

2

disabled.

3.  An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4.  If an individual is capable of performing the work he has done in the past, a finding of 'not disabled' must be made.

5.  If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity[2] must be considered to determine if other work can be performed.

862 F.2d 471, 475 (5th Cir. 1988). The claimant bears the burden at the first four steps, but the burden thereafter shifts to the Commissioner at step five. Once the Commissioner makes the requisite showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart,* 415 F.3d 457, 461 (5th Cir. 2005). A finding that a claimant "is disabled or not disabled at any point in the five-step process is conclusive and terminates the . . . analysis." *Harrell,* 862 F.2d at 475 (citations omitted).

## ADMINISTRATIVE LAW JUDGE'S ANALYSIS

At step one of the evaluation, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since August 9, 2012, the alleged onset date. At step two, the ALJ found that the Plaintiff has the following severe impairments: diabetes with neuropathy and renal sufficiency, carpal tunnel syndrome, degenerate joint disease, and obesity. ([13] at18.) The ALJ concluded that the Plaintiff's alleged depression, bipolar disorder, anxiety, and/or substance induced mood disorder are not severe. At step three, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

---

[2]"Residual Functional Capacity" is defined in the Regulations as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. § 416.945.

impairments in 20 C.F.R. § 404, Part 4, Subpart P, Appendix 1. ([9] at 20.)

In order to make a determination at step four, the ALJ assessed Plaintiff's Residual Functional Capacity ("RFC"). The ALJ found that: "[The Plaintiff] has the residual functioning capacity to perform light work as defined in 20 C.F.R. 404.1567(b)[3] with the following limitations: she can frequently, but not constantly, use her hands to perform fine or gross manipulations." At step four, the ALJ found that the Plaintiff is capable of performing past relevant work as a librarian and medical record technician. Because the ALJ concluded that the Plaintiff is capable of past work, it was unnecessary to proceed to step five, as such a finding directs the conclusion that a claimant is not disabled. *See Harrell,* 862 F.2d at 475 (A finding that a claimant "is disabled or not disabled at any point in the five-step process is conclusive and terminates the . . . analysis.").

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to inquiry into whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,*

---

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

20 C.F.R. § 404.1567(b)

707 F.2d 162, 164 (5th Cir. 1983).   To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id.* at 164 (citations omitted).  However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted).  Conflicts in the evidence are for the Commissioner, not the courts, to resolve.  *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990).   A court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).  If the decision is supported by substantial evidence, it is conclusive and must be affirmed.  *Selders,* 914 F.2d at 617.  Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

> I. *Whether the ALJ erred for failing to assign controlling weight to the opinion of Plaintiff's treating physicians, Dr. M.R. O'Neal, M.D. and Dr. Philip Mellen, M.D.*

The Plaintiff argues that the ALJ assigned "no weight" the opinions of her treating physicians, Dr. O'Neal and Dr. Mellen. *See* Plaintiff's Brief [14] at 6. The record reflects that both physicians submitted reports regarding the Plaintiff's medical issues and ability perform work-related tasks. The opinions indicate the Plaintiff is unable to engage in physical activity or gainful employment. In contrast, and as outlined above, the ALJ found that Plaintiff has the residual functioning capacity to perform light work as defined in 20 C.F.R. 404.1567(b), including her past work as a librarian and records keeper, notwithstanding the treating source opinions.

5

"The opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses[] should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citing *Legget v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). However, an ALJ is free to reject any medical opinion, in whole or in part, when good cause is shown. Good cause exists when the evidence supports a contrary conclusion, when the opinions are conclusory, or when they are unsupported by medically acceptable clinical, laboratory, or diagnostic techniques. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Newton*, 209 F.3d at 455; *Martinez v. Chater*, 64 F.3d 172 (5th Cir. 1995). The United States Court of Appeals for the Fifth Circuit has held that a treating physician's diagnoses that is conclusory and "contradicted by both itself and outside medical evidence" cannot serve as a basis to overturn the Commissioner's decision. *Greenspan v. Shalala*, 38 F.3d 232, 237-38 (5th Cir. 1994).

As an initial matter, the Plaintiff is incorrect in her assertion that the ALJ assigned no weight to her treating physician opinions. The ALJ's decision plainly states that some weight was given to the opinions, but that they were not given controlling weight:

> Regarding the opinion evidence, Dr. Phillip Mellen and Dr. M.R. O'Neal opined that the claimant could not engage in any form of gainful employment on a sustained basis without missing more than two days of work per month or experiencing frequent interruptions . . . These treating doctor opinions . . . received limited weight because they are not generally supported by the record, particularly with [the Plaintiff's] condition as it presented when she is compliant with treatment.

([13] at 21) (citations omitted.)

Moreover, the undersigned finds that the treating physician opinions at issue are precisely the type of conclusory and contradictory evidence that cannot serve as a basis to overturn the Commissioner's decision. First, both treating physician reports consist of an identical one-page form. The form contains six questions followed by a either short blank or multiple answers. Dr.

Mellen states that he has been treating the Plaintiff since 2011. He opines that he has treated the Plaintiff for Type II diabetes with peripheral neuropathy,[4] stage 3 chronic kidney disease, chronic anemia, and depression. He states that her symptoms include pain and numbness of the hands/feet, visual diagnosis, nausea, weakness, tremors, hyperglycermia, headaches, and insomnia. He opines that physical activity would "greatly increase" the Plaintiff's symptoms and "cause distraction" or "total abandonment" from tasks. Dr. Mellen provides no explanation for this conclusion.

Finally, next to the question "Can the claimant engage in any form of gainful employment on a repetitive, competitive, and productive basis over an eight hour work day, forty hours a week, without missing more than 2 days of work per month or experiencing frequent interruptions to his/her work routine due to symptoms of his/her disease or medical problems," Dr. Mellen checked "no." Dr. Mellen provides only a brief explanation for his opinion, and only in regard to the Plaintiff's diagnosis of Type II diabetes. He writes, "Such a schedule would result in increased glycemic instability necessitating treatment for complications of hypo/hyper glycemia as well as acceleration of long-term end-organ consequences (i.e. peripheral neuropathy/amputation, retinopathy/blindness/nephropathy/dialysis)." There is no further explanation or basis supporting Dr. Mellan's opinions provided on the form. ([13] at 413.)

---

[4]Peripheral neuropathy, also called distal neuropathy or sensorimotor neuropathy,  is nerve damage in the arms and legs. Symptoms may include numbness or insensitivity to pain or temperature, a tingling, burning, or prickling sensation, sharp pains or cramps, extreme sensitivity to touch, and loss of balance and coordination. Peripheral neuropathy may also cause muscle weakness and loss of reflexes. *See* Diabetic Neuropathies: The Nerve Damage of Diabetes, NATIONAL INSTITUTE OF DIABETES AND DIGESTIVE AND KIDNEY DISEASES, United States Department of Health and Human Services, available at http://www.niddk.nih.gov/health-information/health-topics/Diabetes/diabetic-neuropathies-nerve-damage-diabetes/Pages/diabetic-neuropathies-nerve-damage.aspx#peripheralneuropathy (Last visited December 30, 2015).

Likewise, Dr. O'Neal's opinion is conclusory and lacking in explanation. Dr. O'Neal states that he has treated the Plaintiff since 1999 for osteoarthritis, diabetes mellitus, renal insufficiency, depression and neuropathy. He lists her symptoms as paresthesia,[5] hand-post-trauma, and carpal tunnel syndrome. He reaches the same conclusions as Dr. Mellan regarding the impact of physical activity on the Plaintiff's symptoms and her ability to engage in gainful employment, but provides no explanation of these conclusions. ([13] at 737.)

In addition, the doctors' opinions regarding the Plaintiff's ability to perform physical tasks are contradicted by other evidence of record. Considerable evidence indicates the Plaintiff's underlying medical conditions are not as severe as she represents. As noted by the ALJ in her decision, the Plaintiff's physical restrictions "appear at least in part self-imposed, as the objective and clinical evidence does not support [such] limitation."

For instance, the Plaintiff asserts that she continues to suffer from renal failure. The record indicates the Plaintiff was treated for acute renal failure due to dehydration at the Forrest General Hospital emergency room in February 2013, but she was discharged the same day, with her physician noting that her renal issues had resolved. ([13] at 344.) There is no further indication in the record that the Plaintiff experienced kidney issues after this time.[6] In November 2013, her doctor

---

[5]Paresthesia refers to a burning or prickling sensation that is usually felt in the hands, arms, legs, or feet, but can also occur in other parts of the body. The sensation, which happens without warning, is usually painless and is described as tingling or numbness, skin crawling, or itching. *See* NINDS Paresthesia Information Page, NATIONAL INSTITUTE OF NEUROLOGICAL DISORDERS AND STROKE, available at
http://www.ninds.nih.gov/disorders/paresthesia/paresthesia.htm (Last visited January 4, 2016).

[6]Several medical records indicate that the Plaintiff was diagnosed with kidney disease, but there are no records indicating that the issue required treatment following the Plaintiff's discharge from Forrest General in February 2013.

noted that her kidney tests were normal and her kidney function was stable. ([13] at 590.) In March 2014, another physician noted that her kidney disease was stable. ([13] at 756.)

The treating physician opinions also state that the Plaintiff suffers from parasthesia and pain in her hands and feet. However, the Plaintiff's complaints in this regard have been inconsistent. In October 2013, she denied any numbness in her hands on two occasions. ([13] at 608; 625.) In December 2013, the Plaintiff stated that she experiences "occasional tingling" in her left thumb, but denied any pain. ([13] at 576.) In March 2014, the Plaintiff once again denied parasthesia/numbness in her hands or feet. ([13] at 754.)

Many of the Plaintiff's alleged restrictions are based upon her diagnosis of diabetes mellitus and continuing pain/weakness in her left hand, which was injured by a dog bite in September 2013. Several of the Plaintiff's physicians noted that her diabetes was uncontrolled; however, the ALJ cited substantial medical records in her decision evidencing the Plaintiff's noncompliance with her diabetes regimen. In January 2014, the Plaintiff had an appointment at the Hattiesburg Clinic to address her diabetes treatment. She forgot her logbook and left her meter at home, and reported that she did not take her prescribed insulin injection that morning. Plaintiff's physician noted that she had missed several appointments and had failed to report her glycemic levels as directed. ([13] at 780.) Later the same month, the Plaintiff admitted that she regularly forgets to take her mealtime insulin. Her physician stated in his notes that the Plaintiff's failure to take insulin injections explained her severe hyperglycemia. The physician also noted that on days when the Plaintiff was "fully compliant" with her insulin therapy, her glycemic levels were much lower. ([13] at 764.)

In March 2014, Plaintiff's physician noted that she was careless in checking her blood sugar. ([13] at 756.) The doctor further noted a "high likelihood of nonadhereance with insulin therapy."

([13] at 755.) The record also reflects that the Plaintiff missed several appointments with her physicians. ([13] at 587; 780; 790.) She fails to regularly monitor her blood sugar levels as directed by her physicians , and does not adhere to the low-sugar, high protein diet that was recommended. ([13] at 301; 587; 590.)

"A medical impairment that reasonably can be remedied or controlled by medication is not disabling." *See John v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988). As noted by the ALJ, "It stands to reason that if the claimant's symptoms were as limiting as she would have them appear, she would be more consistent in following prescribed treatment, which has provided relief of her symptoms in the past." ([13] at 22.)

As for the Plaintiff's limitations based on the injuries to her left hand, the record demonstrates that her condition has for the most part resolved, and that her complaints regarding this injury has been inconsistent. In September 2013, a dog bit the Plaintiff's left hand, which is her dominant hand. ([13] at 689.) The bite fractured the fifth metacarpal and required surgery, which the Plaintiff received two days later. ([13] at 694.) The Plaintiff states that she continues to suffer from pain and has limited use of her left hand. However, in November 2013, an x-ray of the Plaintiff's hand indicated that her fracture was healed and she had a full range of motion in her fingers and wrist. The Plaintiff reported no problems with her left hand, including pain or numbness. ([13] at 576; 600.) Following the surgery, the Plaintiff returned to work. ([[13] at 23.)There are no records, beyond Dr. O'Neal's one-page report, that indicate the Plaintiff suffers from any other ailment affecting her hands.

The ALJ further noted that the Plaintiff's daily activity level supports her residual functioning capacity. The Plaintiff reports that she walks for exercise two days a week. ([13] at 587.)

She cleans her father's house once a week. ([13] at 300.)  The Plaintiff is able to take care of her personal needs, prepare meals, and do household chores. The Plaintiff lives with her husband and is able to drive. She reports that she goes grocery shopping once a week, and states that she engages in social activities three times a week.  ([13] at 171-75.)

Finally, the ALJ assigned significant weight to the opinion of the state agency medical consultant, Dr. Madena Gibson, who examined the Plaintiff and confirmed that she was able to perform a full range of light work, including her past work as a librarian and records keeper. ([13] at 88-90.)

While it is true that the opinions of Dr. O'Neal and Dr. Mellen conflict with other evidence, such evidentiary conflicts are to be resolved by the Commissioner and not the courts. *Selders,* 914 F.2d at 617. The ALJ in this case considered and discussed the entire record, including the Plaintiff's testimony, her medical records, and the opinions of her doctors and the state agency medical consultant. The undersigned's review of the Commissioner's decision is limited to whether there is substantial evidence to support it, and for the reasons set forth above, the undersigned makes such a finding. The record demonstrates that the Plaintiff's medical issues are not disabling, especially when she is compliant with her prescribed treatment. Accordingly, the Commissioner's decision in this regard should be affirmed.

## II.    *Whether the ALJ erred in failing to find Plaintiff's depression to be a severe impairment.*

The Plaintiff argues that the ALJ erred in finding the Plaintiff's depression is a nonsevere impairment. In support of her argument, the Plaintiff states that her treating physician Dr. Philip

Mellan indicated that she was unable to work, in part, due to her depression.

In *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), the Fifth Circuit confirmed the following to be the proper legal standard for determining whether a claimant's impairment is severe: "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).

As outlined above, the ALJ found that the Plaintiff's depression did not constitute a severe impairment according to the standard set forth in *Hekcler*. Specifically, the ALJ found:

> Although the claimant may have . . . bipolar disorder versus depression and anxiety, and/or substance-induced mood disorder, these impairments singly or in combination constitute only a slight abnormality having such a minimal effect on the claimant it would not be expected to interfere with her ability to work. These impairments are thus not "severe" within the meaning of the Act. This finding is in accordance with *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).

([13] at 20.)

The Plaintiff argues that Dr. Mellen's opinion regarding her depression should have been given controlling weight. However, Mr. Mellen's opinion only briefly alludes to the Plaintiff's depression, as it is simply listed as one of the conditions for which the Plaintiff sought treatment. There is no discussion by Dr. Mellen regarding the severity of the Plaintiff's depression. As set forth above, the Fifth Circuit has held that a conclusory treating physician's opinion cannot serve as a basis to overturn the Commissioner's decision. *Greenspan*, 38 F.3d at 237-38.

Moreover, substantial evidence supports the ALJ's finding that Plaintiff's depression was not severe. Dr. R. D'Ilio conducted a comprehensive mental status evaluation of the Plaintiff on January 3, 2013. He noted that the Plaintiff was capable of performing daily tasks, but also noted

that the Plaintiff reported trouble sleeping and low energy. The Plaintiff denied suicidal thoughts or hallucinations. She was capable of recalling immediate and remote events. Dr. D'Ilio reported that the Plaintiff was pleasant and well controlled. Dr. D'Ilio concluded that Plaintiff's mental status evaluation was unremarkable. He opined that although the Plaintiff's medication regimen may interfere with her ability to perform tasks "optimally," her results did not suggest that she would be unable to perform routine and repetitive tasks, interact with coworkers, receive supervision, or maintain attention and concentration. ([13] at 339-42.)

The Plaintiff was also examined by Dr. Albert DeVillier on April 11, 2012. In his notes, Dr. DeVillier states the Plaintiff cried during the interview when speaking of the death of several family members and pets, and appeared depressed and anxious. However, Dr. DeVillier also noted that the Plaintiff was oriented, her thought processes coherent, and her thought content appropriate. She denied any perceptual problems or hallucinations. The Plaintiff had good concentration and her memory was intact. ([13] at 204-06.)

In her decision, the ALJ considered the four broad functional areas outlined in Listing 12.00C for evaluating mental disorders–activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation. In regard to activities of daily living, the ALJ found a mild limitation, as the Plaintiff reported she was capable of daily activities such as personal hygiene, household chores, grocery shopping, and driving a vehicle. ([13] at 171-75.)

Next, the ALJ considered the Plaintiff's social functioning. The Plaintiff reported that she engages in social activities three times a week. She also reports that she regularly speaks on the phone to her sister, and visits her father at his home. ([13] at 175). At the hearing, the Plaintiff testified that she wants to stay home when she feels "down." However, the ALJ also noted that the

Plaintiff appeared, "polite, cooperative, appropriate, well controlled, socially skilled and pleasant to interact with" during the hearing. ([13] at 19.) For these reasons, the ALJ concluded the Plaintiff had only a mild limitation in this area.

The ALJ then considered the Plaintiff's concentration, persistence and pace, and found only a mild limitation. The Plaintiff testified at the hearing that she has difficulty in paying attention for more than 30 minutes. ([13] at 20.) Both Dr. D'Ilio and Dr. DeVillier opined, however, that the Plaintiff demonstrated good concentration and attention. ([13] at 19; 171-75). The Plaintiff also reported that he enjoyed watching television, doing jigsaw puzzles, and reading, all of which the ALJ noted required some concentration. ([13] at 175.) Finally, the ALJ found that the Plaintiff experienced no episodes of decompensation.

The record contains considerable references to the Plaintiff's depression, and reflects that she takes medication[7] to treat her symptoms ([13] at 212; 339; 754; 764; 766). The record also reflects that Dr. Michael Gonzales opined on March 4, 2014, that the Plaintiff's depression was "uncontrolled."[8] ([13] at 756.) The undersigned acknowledges this creates some discrepancy in the

---

[7]Plaintiff reports that she takes Xanax, Wellbutrin, and Cymbalta. All three medications treat depression and anxiety. *See* Alprazolam (Xanax), MedLinePLus, UNITED STATES NATIONAL LIBRARY OF MEDICINE, available at https://www.nlm.nih.gov/medlineplus/druginfo/meds/a684001.html (Last visited January 8, 2016); Bupropion (Wellbutrin), PubMed Health, UNITED STATES NATIONAL LIBRARY OF MEDICINE, available at http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0009361/?report=details (Last visited January 8, 2016); Duloxetine (Cymbalta), PubMed Health, UNITED STATES NATIONAL LIBRARY OF MEDICINE, available at http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0010059/?report=details (Last visited Janaury 8, 2016).

[8]Dr. Gonzales treated the Plaintiff at the Hattiesburg Clinic on four occasions. ([9] at 753; 766; 782; 797.) The Plaintiff sought treatment from Dr. Gonzales for her Type 2 diabetes–not depression. Dr. Gonzales's notes reflect that he is not the Plaintiff's primary care physician.

record. As set forth above, however, evidentiary conflicts are to be resolved by the Commissioner and not the courts. *Selders,* 914 F.2d at 617. The ALJ in this matter applied the correct legal standards, and for the reasons set forth above, her findings are supported by substantial evidence. *Hollis,* 837 F.2d at 1382. Accordingly, the Commissioner's decision should be affirmed as to this ground.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and utilizes correct legal standards. It is, therefore, the recommendation of the undersigned that Defendant's Motion [15] to Affirm the Commissioner's Decision be GRANTED, and that the Complaint [1] be dismissed and the denial of benefits be affirmed.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules, any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the Judge, the Magistrate Judge and the opposing party. The District Judge at the time may accept, reject, or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

---

([13] at 756.)

THIS the 11th day of January, 2016.

s/ Michael T. Parker
United States Magistrate Judge